IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD T. BLANCHARD, | ) | CASE NO. 3:16 CV 2783 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Edward T. Blanchard under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 6.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**Facts**

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Blanchard who was 52 years old at the time of the administrative hearing,[11] graduated high school and is not married.[12]  His past relevant employment history includes work as a forklift operator, mixing machine tender, and quality control worker.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Blanchard had the following severe impairments: history of cardiac disease treated with angioplasty and bypass graft surgery; degenerative disc disease of the cervical spine; degenerative disc disease of lumbar spine; status post impingement syndrome of the left shoulder; bilateral degenerative joint disease of the knees; partial tear of the proximal MCL of the left knee; obesity, and diabetes mellitus (20 CFR 404.1520(c)).[14]

---

[7] ECF # 21 (Commissioner's brief); ECF # 16 (Blanchard's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 16-2 (Blanchard's charts).

[9] ECF # 16-1 (Blanchard's fact sheet).

[10] ECF # 25.

[11] ECF # 10, Transcript ("Tr.") at 43.

[12] *Id*. at 43-44.

[13] *Id*. at 41.

[14]  *Id*. at 18.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Blanchard's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date of last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he is limited to occasional climbing of ramps and stairs; never climbing ladders, ropes and scaffolds; occasional stooping, kneeling, crouching, and crawling; occasional reaching above shoulder level with the left upper extremity; he should avoid all exposure to workplace hazards, such as unprotected heights, moving machinery, and commercial driving. Further, the claimant can sit once every 30 minutes for 1 to 2 minutes in the immediate vicinity of his work station.[15]

Based on that residual functional capacity, the ALJ found Blanchard capable of his past relevant work as quality control worker[16] and, therefore, not under a disability.[17]

**B.      Issues on judicial review**

Blanchard asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Blanchard presents the following issues for judicial review:

(1)     Whether the ALJ erred in applying *Drummond* to reach his conclusions concerning residual functional capacity where:

- he agreed there was new and material evidence;

- this evidence documented a clear worsening of Mr. Blanchard's back problems (although the ALJ believed otherwise); and

---

[15] *Id.* at 24.

[16] *Id*. at 30.

[17] *Id.* at 32.

- treating physician opinion and functional capacity evaluation supported evidence of worsening?

(2) Whether the ALJ erred in the evaluation of treating physician opinion where his opinion was supported by the objective record and a functional capacity evaluation.[18]

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

---

[18] ECF # 16 at 1.

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.  *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

---

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

-9-

and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

---

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.    Application of standards**

This case first presents the question of whether the current ALJ erred in concluding that new and material evidence arising after a prior ALJ's decision did not provide a basis for a different RFC in this case. Further, this case also raises an issue as to whether the ALJ properly evaluated the functional opinion of Blanchard's treating physician, Dr. Farzana Tausif, M.D.

For the reasons that follow, I will find that substantial evidence supports the decision of the Commissioner to deny benefits.

**1.    *Dr. Tausif's opinion***

The ALJ in the opinion discusses Dr. Tausif's treatment notes from the relevant time period of March 23, 2013 to June 30, 2014. Specifically, the ALJ discussed an April 10, 2014 treatment note in two different places,[70] as well as an additional physical examination

---

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] Tr. at 25, 26.

later that month by Dr. Steven Wing, M.D.[71] In addition, the ALJ discussed Dr. Tausif's notes of the physical examination he conducted on June 3, 2014,[72] which is the same date he prepared the functional opinion.[73]

In analyzing the functional opinion the ALJ initially observed that this opinion was deserving of little weight because "the medical evidence of record since the alleged onset date to the date of this opinion does not support such significant limitations or deterioration from the prior residual functional capacity."[74] In that regard, the ALJ stated later in that same paragraph that the treatment note from Dr. Tausif concerning his examination of June 3, 2014 "noted that the claimant's allegations that he could only sit or stand for 30 minutes" was inconsistent with that physical examination "which found the claimant in no acute distress, the neck was supple, and there was no peripheral edema."[75] From this, the ALJ concluded that "[t]he limited examination findings appear inconsistent with the extreme limitations opined by Dr. Tausif, further detracting from his opinion."[76]

Blanchard, for his part, asserts first that the ALJ gave no support for his observation that there is no evidence in the record to support finding a deterioration in the functional

---

[71] *Id*. at 25; see, *id*. at 425-26.

[72] *Id*. at 396-99.

[73] *Id*. at 26.

[74] *Id*.

[75] *Id*. at 26-27.

[76] *Id*. at 27.

-14-

capacity from the prior RFC.[77] Rather, Blanchard contends, the ALJ cited to "purely speculative" reasons as to why a physician may provide an opinion simply to bolster their patient's case.[78]

In fact, and as detailed above, the ALJ did not, as Blanchard maintains, solely rely on speculation about possible reasons for providing a favorable opinion, but rather cited to inconsistencies between the functional opinion and the treatment notes from an examination conducted on the same day.[79] Moreover, as is also set forth above, the ALJ had already noted in the opinion that Dr. Tausif's treatment notes from an examination conducted earlier on April 10, 2014, in which there was "no report of neck or shoulder pain."[80]

Moreover, and as to the ALJ's comment concerning the lack of evidence supporting a deterioration in functional capacity since the prior RFC, I note that the ALJ here stated in the opinion that another physical examination done later in April 2014 "noted normal neck range of motion and normal range of motion in the upper extremities.[81] There is no requirement that an ALJ in his summary of reasons restate findings that have already been

---

[77] ECF # 16 at 9.

[78] *Id.*

[79] Tr. at 26.

[80] *Id.* at 25.

[81] *Id.* (citing to transcript).

-15-

set out and supported earlier in the opinion.[82]  Although it may have been helpful if the ALJ had explicitly cross-referenced in the concluding statement all his earlier discussion of evidence showing no deterioration in the relevant time period of the prior RFC, the ALJ's findings on this subject are clear from the record, constitute good reasons for the decision, and are capable of meaningful judicial review.

2.  *New evidence*

In this case, the ALJ determined that new and material evidence from the time after the prior decision in 2013 warranted the recognition of diabetes as an additional severe impairment and further warranted a change in the description of several non-severe impairments.[83]  But, the ALJ also concluded that no new and material evidence existed that would support a different RFC from that set forth in the 2013 decision.[84]

Blanchard essentially contends that the ALJ erred by not properly evaluating a December 2014 MRI that Blanchard maintains showed a worsening of his back condition.[85]  The Commissioner responds first that this MRI was performed after Blanchard's date last insured, which was June 30, 2014.[86]  Further, the Commissioner points out that the ALJ

---

[82] See, *Lay v. Colvin*, No. 3:15CV316, 2016 WL 5415744, at * 8 (E.D. Tenn. Sept. 28, 2016).

[83] Tr. at 18.

[84] *Id.* at 24.

[85] ECF # 16 at 6.

[86] ECF # 21 at 7.

specifically discussed the treatment notes from a December 3, 2014 examination where Blanchard complained of lower back pain and his physician recommended a L5-S1 fusion.[87]

In addition, the ALJ actually conducted a fairly thorough review, covering several pages of the opinion, of Blanchard's treatment history from late 2014 up to Blanchard's own report in October 2015 that he was walking 2-3 times a week for 15-20 minutes.[88] The ALJ took particular note that there was demonstrated improvement in Blanchard's condition within 12 months of his fusion surgery, "with lack of complication shown on repeated imaging studies," such that Blanchard's "impairments continue to be sufficiently accounted for the assessed residual functional capacity."[89]

In sum, I find that the ALJ did not err in finding that there was no new evidence that would be material as to supporting a different RFC.

## Conclusion

Accordingly, for the reasons stated above, I find that the decision of the Commissioner denying benefits to Edward T. Blanchard is supported by sufficient evidence and consonant with the relevant law. Therefore, this decision is hereby affirmed.

IT IS SO ORDERED.

Dated: February 27, 2018                s/ William H. Baughman, Jr.
                                        United States Magistrate Judge

---

[87] *Id*.

[88] Tr. at 27-29.

[89] *Id*. at 29.